### A04A1080. PATTERSON v. THE STATE.
(604 SE2d 569)

MILLER, Judge.

A jury found Ricky Eugene Patterson guilty of voluntary manslaughter and reckless conduct in the shooting death of a young man. For sentencing purposes, the trial court merged the reckless conduct charge into the voluntary manslaughter charge. In this appeal, Patterson only challenges the sufficiency of the evidence. After review, we affirm.

On appeal, the defendant no longer enjoys the presumption of his innocence and the evidence must be viewed in the light most favorable to the verdict. *Pollard v. State*, 230 Ga. App. 159 (495 SE2d 629) (1998). Our function is not to weigh the evidence or to assess the credibility of witnesses but to determine whether the record contains sufficient evidence to enable a rational trier of fact to find the defendant guilty beyond a reasonable doubt of the charged offense. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). So considered, the evidence shows that late into the night, several people were working on cars outside Patterson's home. In the morning, Chris Patterson, Patterson's nephew, told him about people "prowling through" his cars and trucks, specifically identifying the victim as one of them and suggesting that some items were taken. When Patterson checked, he discovered that a battery and some tools were missing. After drinking several beers, perhaps as many as six, an upset Patterson left in his pickup truck, telling his nephew that he was "going to find out where [my] stuff [is]" and get it back.

Patterson drove to a neighbor's home where he asked his neighbor "to take a ride with him." Patterson told this neighbor that "somebody had stolen some property and he wanted to get it back." The neighbor noticed a .44 magnum handgun positioned between his seat and Patterson's. Patterson pulled up outside a trailer close to the two-door cream-colored Monte Carlo belonging to the victim. Armed with the loaded .44 magnum pistol, Patterson swiftly approached the victim's car.

The victim's cousin was standing outside the Monte Carlo talking with the victim. Just before Patterson's arrival, the victim had been working directly behind the driver's seat in the back seat area, installing an amplifier. The victim's cousin testified that when Patterson pulled up, the victim was in the back seat facing him as he stood

next to the passenger side door. The cousin testified that the pickup truck came in "extremely fast," and that Patterson exited it quickly before it came to a full stop. The cousin testified that Patterson appeared angry, adding, "that's why I took a couple of steps back because I thought he might try to attack me." Patterson asked the victim's cousin, "where is [sic] your fucking buddies?" At that point, the victim leaned forward and asked "what's going on?" Patterson retorted that someone "stole [my] shit" and that he wanted it back. Patterson then raised his gun and pointed it at the rear side window of the Monte Carlo, pausing just briefly before firing directly into the car.

Patterson's neighbor recalled hearing the exchange of some indecipherable words followed by the sound of a single gunshot. He testified that Patterson hurried back to the truck, saying something to the effect of, "I screwed up" and "I think I just shot that guy." After leaving the scene of the shooting, Patterson drove a short distance then stopped. He asked his neighbor to drive his truck home and to tell his wife that he loved her. Shortly after the shooting, a law enforcement officer spotted a fresh footprint outside a trailer not far from the crime scene and apprehended Patterson from his hiding place beneath the trailer.

The deputy chief state medical examiner, a board-certified forensic pathologist, conducted the autopsy of the decedent, whom he described as a "young adult male." The medical examiner testified that the fatal bullet had entered the victim's body at the top of his right shoulder near the base of his neck and had "nearly transected the spinal cord" before penetrating the decedent's left lung while on its downward track. He further testified that he noted a pattern of "pseudo stippling" on the victim's body, meaning small abrasions to the skin caused by fragments breaking away from an intermediate target. After examining photographs of the rear passenger side window of the victim's Monte Carlo, and based on his observations of the victim's body, the medical examiner testified that when the bullet passed through the window, it had shattered the glass, creating the stippling effect along the victim's upper right arm and top of his shoulder and around the entry wound at the base of his neck. In his professional opinion, the victim had raised his arm up. From that testimony, the jury could infer that the victim was in a defensive posture when he was shot.

At trial, Patterson admitted being "mad because they took my stuff," but denied intending to harm anyone. While conceding that he had deliberately and intentionally fired his gun, Patterson claimed that he had done so because the victim's cousin was moving toward his car and because "I was scared he'd have a gun in it." Patterson also claimed that he did not realize that the victim was inside the car until

"that bullet hit him and it scared me." Patterson's courtroom testimony, however, contradicted his custodial statement that the gun had discharged accidentally when it struck the door of his truck as he was getting out of his vehicle. Patterson conceded that his testimony in court was the first time that he had mentioned anything about someone else having a gun. The jury acquitted Patterson of malice murder and felony murder but convicted him of voluntary manslaughter.

In his sole claim of error, Patterson contends that the evidence adduced at trial was not sufficient to prove beyond a reasonable doubt that he committed the offenses of voluntary manslaughter and reckless conduct. He asserts that in light of the lack of evidence against him, the State failed to disprove the reasonable hypothesis of his innocence. This argument misperceives the law. Under OCGA § 24-4-6, only when the evidence is entirely circumstantial must the evidence exclude every other reasonable hypothesis except that of the guilt of the accused. See *Savage v. State*, 229 Ga. App. 560, 563 (494 SE2d 359) (1997). Here, the evidence consisted of a combination of circumstantial and direct evidence, in particular, the direct testimony of an eyewitness to the shooting.

Nor does Patterson's challenge to the sufficiency of the evidence have merit. Voluntary manslaughter requires proof that the defendant caused the death of another under circumstances that would otherwise be murder but for the fact that the defendant acted "solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." (Citations and punctuation omitted.) *Miller v. State*, 223 Ga. App. 311, 312 (477 SE2d 430) (1996). Fear of some danger can be sufficient provocation to excite the passion necessary for voluntary manslaughter. *Mitchell v. State*, 199 Ga. App. 159, 161 (404 SE2d 329) (1991).

Here, the evidence shows that after Patterson learned that certain specified individuals had taken some of his property without permission, he started drinking beer, grew increasingly angry, then started hunting for the persons whom he believed were responsible. Then, he fired a single shot at close range in the direction of a man whom he suspected of stealing from him. While the jury could well have attributed the killing to revenge, it evidently elected not to do so. See *Goforth v. State*, 271 Ga. 700, 701 (1) (523 SE2d 868) (1999) (sufficiency of the provocation and question of revenge must be decided by the jury). Although Patterson testified that "what happened was an accident," and also testified that he was afraid that the victim's cousin was moving toward a gun, "[d]ecisions regarding credibility are exclusively for the jury." (Citations omitted.) *Stanley v. State*, 267 Ga. App. 656, 658 (601 SE2d 141) (2004). The evidence

plainly sufficed to sustain Patterson's conviction for voluntary manslaughter. See *Miller*, supra, 223 Ga. App. at 312.

Similarly, the evidence was sufficient to support his conviction for reckless conduct. OCGA § 16-5-60 (b) criminalizes conduct by which:

> [a] person . . . causes bodily harm to . . . another person by consciously disregarding a substantial and unjustifiable risk that his act . . . will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation. . . .

Here, the evidence shows that Patterson, after drinking beer, approached the victim's car with a loaded handgun. While angry and upset, Patterson fired a single shot into the rear side passenger window while the victim was confined inside his vehicle. This evidence was plainly sufficient to sustain Patterson's conviction for reckless conduct. See *Beaton v. State*, 255 Ga. App. 901, 903 (3) (567 SE2d 113) (2002).

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED AUGUST 30, 2004.

*Jerry W. Moncus*, for appellant.
*Kermit N. McManus, District Attorney*, for appellee.